UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ROY VEAL, individually and on behalf
of all others similarly situated,**

   **Plaintiffs,**

**vs.**             **Case No. 8:04-CV-323-T-27MSS**

**CROWN AUTO DEALERSHIPS, INC.,**

   **Defendant.**

_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's Motion for Class Certification (Dkt. 124); Plaintiff's

Memorandum of Law in Support of Class Certification (Dkt. 125); Defendant's Substitute

Memorandum in Opposition to Class Certification (Dkt. 226); and Plaintiff's Reply (Dkt. 232).

Upon consideration, Plaintiff's motion is **GRANTED**.

Plaintiff Roy Veal initiated this putative class action seeking compensatory and statutory

damages in connection with the sale of an automotive product known as TracGuard by eleven

automobile dealerships owned and operated by Crown Auto Dealership, Inc. (hereafter "Defendant"

or "Crown Auto").  (Dkt. 134).  Plaintiff alleges that Defendant failed to adequately disclose the cost

of a product called "Etch", which was included as part of Defendant's TracGuard protection.[1]  (Dkt.

134, ¶¶ 7, 10).   According to Plaintiff, the "Etch" product was a vehicle theft deterrent, which

---

[1] Plaintiff alleges TracGuard also included other claimed protections such as 'Multigrade
Polymer Paint Protector New/Used Vehicle 5-Year Guarantee', 'Fabric Protector New/Used Vehicle 5-
Year Guarantee,' 'Leather/Vinyl Protector New/Used Vehicle 5-Year Guarantee', and '5-Year New/Used
Vehicle Tire and Wheel Guarantee.'" (Dkt. 134, ¶10).

1

claimed to provide a "5-Year New/Used Anti-Theft $5,000 & $1,000 Benefit Recovery Guarantee", but in reality provided very little or no benefit to the customer.  (Dkt. 134, ¶ 8).  Plaintiff alleges that "Crown simply etches an identification number into the windows of its new and used cars as an alleged theft deterrent and then sells the insurance coverage or guarantee at an enormous profit without ever disclosing to the buyer its actual cost or payment for the Etch product to others, and the actual price of the insurance coverage." *Id*.

Plaintiff alleges Defendant engaged in deceptive and unfair business practices in order to profit from the sale of the "Etch" product by routinely failing to make adequate disclosures concerning the sale of the product, including accurate disclosures of the amount financed, finance charges, and annual percentage rates in its standard form retail installment sales contract.  (Dkt. 134, ¶¶ 7, 17, 18).  Plaintiff alleges the TracGuard Registration Form was misleading because it misled consumers as to the true benefit it provided, it failed to specify the premium paid for the "Etch" product and it failed to name the insurer providing coverage.  (Dkt. 134, ¶¶ 12-17)

Plaintiff's Fourth Amended Complaint sets forth claims for (1) violations of the Truth in Lending Act ("TILA") (Count I), (2) violations of the Florida Motor Vehicle Retail Sales Finance Act (the "Finance Act") (Count II), (3) violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count III); (4) unjust enrichment (Count IV); (5) violations of Florida's Warranty Association Act (Count V); and (6) restitution (Count VI).

Plaintiff moves for class certification pursuant to Rule 23(a) and 23(b)(3), Federal Rules of Civil Procedure. (Dkt. 124).  Plaintiff proposes the following class and subclass definitions:

Proposed Class Definition: All persons who have purchased vehicles from Crown Auto, which included the sale of Crown Auto's TracGuard product, inclusive of the anti-theft etch insurance, between September 4, 1999 through the present.

2

Proposed Finance Act Subclass Definition: All persons who have purchased vehicles from Crown Auto, which included the sale of Crown Auto's TracGuard product, inclusive of the anti-theft etch insurance, and financed that purchase by initially entering into a retail installment sales contract with Crown Auto, no later than September 4, 1999, in which Crown violated Florida Statutes, section 520.12 by (1) failing to clearly and conspicuously make accurate disclosures in writing, in a form that the consumer may keep, prior to the consummation of the credit transaction pursuant to Florida Statutes, section 520.07(2)(a)-(e), as a result of including the cost of anti-theft etch insurance in the amount financed instead of the finance charge without providing the necessary TILA and Regulation Z disclosures; and (2) failing to identify and itemize the cost of TracGuard in accordance with Florida Statutes, section 520.07(3)(d).

Proposed TILA Subclass Definition: All persons who have purchased vehicles from Crown Auto, which included the sale of Crown Auto's TracGuard product, inclusive of the anti-theft etch insurance, and financed that purchase by initially entering into a retail installment sales contract with Crown Auto, with an amount financed not exceeding $25,000.00, no later than September 4, 1999, in which Crown Auto failed to clearly and conspicuously make accurate disclosures in writing, in a form that the consumer may keep, prior to the consummation of the credit transaction, as a result of including the costs of anti-theft etch insurance in the amount financed instead of the finance charge without providing the necessary disclosures, as required by TILA and Regulation Z.

(Dkt. 124, pp. 2-3)

Defendant contests class certification, arguing Plaintiff cannot satisfy the typicality or adequacy requirements under Rule 23(a) and cannot satisfy the predominance and superiority requirements under Rule 23(b)(3). (Dkt. 226).

## APPLICABLE STANDARD

In order to obtain class certification, Plaintiff must show that the four prerequisites of Rule 23(a) are met and that one of the provisions of Rule 23(b) applies. *See* Fed.R.Civ.P. 23; *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 721 (11th Cir. 1987). Rule 23(a) requires the proposed class representatives demonstrate that:

(1) the class is so numerous that joinder of all members is impracticable (numerosity);

(2) there are questions of law or fact common to the class (commonality);

3

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and

(4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation).

*See* Fed.R.Civ.P. 23(a).

In addition, because Plaintiff seeks class certification under Rule 23(b)(3), the Court must find that (1) the questions of law or fact common to the members of the class predominate over those questions affecting individual members only, and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed.R.Civ.P. 23(b)(3); *Kirkpatrick*, 827 F.2d at 721.

The merits of Plaintiff's claims are not to be evaluated when determining whether the requirements of Rule 23 have been satisfied. *Kirkpatrick*, 827 F.2d at 722. However, a court "may look beyond the allegations of the complaint in determining whether a motion for class certification should be granted." *Kirkpatrick*, 827 F.2d at 722. "It is necessary to analyze the plaintiff['s] factual allegations, the record evidence pertinent to class action issues, and the applicable law in order to understand and evaluate the propriety of the class action device . . ." *Anderson v. Bank of the South, N.A.*, 118 F.R.D. 136, 138 (M.D. Fla. 1987); *see also Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984) (stating that the limitation on examining the merits "should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements"). "[B]efore a district court determines the efficacy of class certification, it may be required to make an informed assessment of the parties' evidence. That a trial court does so does not mean that it has erroneously 'reached the merits' of the litigation." *Cooper v. Southern Co.*, 390 F.3d 695, 712-173 (11th Cir. 2004) (citing *Kirkpatrick*, 827 F.2d at 722).

4

## DISCUSSION

### Standing

Prior to the certification of a class and before undertaking any analysis under Rule 23, the Court must determine that at least one named class representative has Article III standing to raise each class claim. *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Under the principles of standing, "a plaintiff must allege and show that he personally suffered injury." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). Thus, the Court must determine whether the class representative is "part of the class and possess[es] the same interest and suffer[ed] the same injury as the class members." *Prado-Steiman*, 221 F.3d at 1279 (citations omitted).

Defendant contends Plaintiff lacks standing because he is not a member of the class, as the class is defined in the Fourth Amended Complaint. In the Fourth Amended Complaint, the class is limited to individuals who purchased "vehicles from Crown, which included the sale of Etch Insurance . . . no later than one (1) year prior to the filing of this action [effectively January 16, 2003]". Plaintiff purchased his vehicle in September 2001. Therefore, he does not fall within the class as defined in the Amended Complaint. Plaintiff's standing issue is remedied, however, because the proposed class definition was amended in Plaintiff's motion for class certification to include "[a]ll persons who have purchased . . . Crown Auto's Trac Guard protection . . . no later than September 4, 1999 . . ." Defendant challenges Plaintiff's standing on no other ground. Accordingly, denial of Plaintiff's motion for lack of standing is inappropriate.

### Rule 23(a) Requirements

Defendant contends Plaintiff fails to satisfy Rule 23(a)'s typicality and adequacy of representation requirements.

5

### 1.    Typicality

"[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large. *Cooper*, 390 F.3d at 713 (citations omitted). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Id.* "Neither the typicality nor the commonality requirement 'mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative class members do not defeat certification." *Id.* at 714 (citations omitted). However, "the named plaintiffs' claims must still share 'the same essential characteristics as the claims of the class at large.'" *Id.*

Defendant contends Plaintiff fails to satisfy the typicality requirements because his claim is "fundamentally different than that of the class". According to Defendant, Plaintiff's deposition testimony demonstrates that Plaintiff wanted the Etch product and did not find it valueless and that this assertion is fundamentally different from the allegations contained in the Fourth Amended Complaint. (Dkt. 226, p. 19). Defendant argues Plaintiff's theory of liability therefore, requires different offerings of proof. *Id.*

Defendant misunderstands Plaintiff's testimony in this regard. Plaintiff testified that he thought he was purchasing "LoJack", which he believed to be different from TracGuard and the "Etch" product. (Veal Depo., pp. 140-144). Plaintiff's Buyer's Order Form lists "TracGuard LoJack" as a Dealer Installed Accessory, without any reference to the "Etch" product. (Dkt. 134, Ex. 1). Consistent with Plaintiff's testimony, in the Fourth Amended Complaint, Plaintiff alleges Defendant offered the "Etch" Product as a security system along with other services in its TracGuard protection and misled customers as to the price and the coverage provided. (Dkt. 134, ¶¶ 10, 12,

13-17). Plaintiff alleges Defendant engaged in a pattern of deceptive and unfair business practices in order to profit from the sale of the "Etch" product without providing any realistic benefit and without the proper disclosures. (Dkt. 134, ¶¶ 7, 17, 18). Plaintiff's deposition testimony, albeit confusing in some respects, is consistent with the allegations of the class as a whole, including the contention that the "Etch product sold by Crown provides little to no benefit to its customers".

Plaintiff's claims, therefore, arise from the same alleged pattern or practice and are based on the same legal theory as the purported class members. At a minimum, Plaintiff has demonstrated that his claims share the same essential characteristics as the claims of the class at large. Therefore, the typicality element is met. *See Prado-Steiman*, 221 F.3d at 1279, n. 14 ("a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences") (citing *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985)); *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("a sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory").

### 2.    Adequacy of Representation

The adequacy element requires that the representative party in a class action "must adequately protect the interests of those he purports to represent." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citations omitted). This element applies to both the class plaintiff and the class counsel. *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003). The determining factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000). This analysis

encompasses two separate inquires: (1) whether any substantial conflicts of interest exist between the representative and the class; and (2) whether the representative will adequately prosecute the action." *Valley Drug Co.*, 350 F.3d at 1189 (citations omitted).

Defendant contends Plaintiff is inadequate because he "has not demonstrated a level of understanding about the case sufficient for him to serve as class representative." (Dkt. 226, p. 17).[2] Plaintiff's deposition testimony undeniably demonstrates that Plaintiff lacks knowledge regarding the specific legal theories he asserts on behalf of the class and lacks an understanding of the procedural aspects of this case. (Veal Depo., pp. 76-82, 88–94). His testimony, however (when read in its entirety) demonstrates, albeit minimally, that (1) he understands what the case is about, (2) he understands his responsibility to represent the interests of others, and (3) he has participated and is willing to continue to participate in the litigation of the class claims. (Veal Depo, pp. 5-6,[3] 60-62,[4] 81-82, 96-97, 140-146,[5] 165-166, 189-190,[6] 205, 209,[7] 211;[8] *see also*, Veal Aff., ¶¶ 2-5).

---

[2] Defendant neither challenges the adequacy of class counsel nor contends that a conflict of interest exists between Plaintiff and other potential class members.

[3]  Q: How were you harmed?
   A: Well, I was misrepresented I believe.
                                                                    * * *
   Q: What was misrepresented to you?
   A: I was sold a product, and charged for it, that I didn't receive, is my understanding.
   Q: What product was it that you were sold that you didn't receive?
   A: Something called Trac Guard, some anti-theft.

[4] Q: Are there any other obligations or duties that a plaintiff in a class action representative [sic] has?
                                                                    * * *
   A: I guess whatever his lawyer tells him to do.  I don't know all of these technical terms.
   Q: Do you have an understanding of whether you have an obligation as a class action representative or some type of duty to the people that are in the class?
   A: Yes.
   Q: What are your duties to the people in the class?
   A: Make sure I put everybody together and do what's best for the group, not just me.

8

More significantly, Plaintiff has established that he is willing and able, through competent class

counsel, to take an active role in the litigation and to protect the interests of the class as a whole.

While Plaintiff admitted that his "memory isn't as good as it used to be", his testimony does not

create the type of credibility concern deemed sufficient to find a plaintiff inadequate. (Veal Depo.,

pp. 21-25); *compare, Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) (plaintiffs deemed inadequate

representatives where one plaintiff relied on a report he later admitted did not exist at the time he

allegedly relied on it and other plaintiff refused to answer discovery requests).   Defendant has

---

[5] Q: Okay. But you knew before you signed this form that you were purchasing Trac Guard
LoJack for $595, correct?
   A: You keep saying Trac Guard LoJack. They're two different things. I knew I was getting
LoJack installed on there. The Trac Guard I didn't know what the difference was but now I do. Later on
I found out what the Trac Guard was supposed to be.

[6] Q: What is it that you're trying to get for the members of the class, if anything?
   A: A fair agreement.
   Q: What's a fair agreement?
   A: Reimbursement for something we paid for and didn't get, plus interest.

[7] Q: What's your best estimate sitting here today of how much time you spent working on this
case?
   A: I don't know.
   Q: What have you done to work on this case?
   A: I come over here an do this today. I went to mediation in Tampa. I've been down to the
offices a few times. That's my time.

[8] Q: Let's say they gave you $10,000 plus interest; would you just forget about the class action?
   A: Would I settle?
   Q: Yeah.
                                        * * *
   A: Just me?
   Q: Yeah, you?
   A: Damn the rest? No.
   Q: You would hold out for the class?
   A: Yes.

presented no persuasive reason to believe that the class members will suffer or that their due process rights will suffer as a result of Plaintiff's and class counsel's representation. Accordingly, Plaintiff has met the requirements of Rule 23(a).

## Rule 23(b) Requirements

Defendant contends Plaintiff fails to satisfy the predominance and superiority elements required pursuant to Rule 23(b)(3).

### 1.    Predominance

Pursuant to Rule 23(b)(3), questions of law or fact common to the members of the class must predominate over any questions affecting only individual members. Common questions of law or fact predominate if "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, [ ] predominate over those issues that are subject only to individualized proof." *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989) (citations omitted). "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) (citations omitted). "Common issues will not predominate over individual questions if 'as a practical matter, the resolution of . . . [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Cooper*, 390 F.3d at 722 (citations omitted). However, "it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Klay*, 382 F.3d at 1254 (citations omitted).

10

Defendant contends individual issues predominate over common questions of law or fact with respect to each of Plaintiff's claims.

*Equitable Tolling of Plaintiff's TILA Claim*

Defendant contends that individual issues predominate with regard to the application of the statute of limitations to Plaintiff's TILA claim. The Eleventh Circuit has recognized that TILA's statute of limitations is subject to equitable tolling. *See Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, (11th Cir. 1998). However, the Eleventh Circuit has not expressly required fraudulent conduct beyond the non-disclosure itself to warrant application of the equitable tolling principle. The majority of district courts that have addressed the issue have required fraudulent conduct beyond the non-disclosure. *See e.g. Cardiello v. The Money Store, Inc.*, 2001 WL 604007 *4 (S.D.N.Y. 2001) ("courts have held uniformly that fraudulent conduct beyond the nondisclosure itself is necessary to equitably toll the running of the statute of limitations"); *Jones v. Saxon Mortgage, Inc.*, 980 F.Supp. 842, 846 (E.D. Va. 1997) (alleged acts of concealment must amount to more than a failure on behalf of the defendant to disclose the initial fraudulent conduct).

If Plaintiff's allegations are true, in addition to the inadequate disclosures in violation of TILA and Regulation Z, Defendant fraudulently concealed the true benefit of the "Etch" product from the customer. (Dkt. 134, ¶¶ 7, 17, 18).[9] Plaintiff alleges that via its relationship with Jose Terry, Terryco International, Inc., and Pro-Tech Dealers Services, Inc., Defendant engaged in a deceptive scheme to profit from the sale of "Etch" without providing a realistic benefit to its

---

[9] Part of the confusion may arise from the various terminology used for the anti-theft product and whether TracGuard included various anti-theft options. Plaintiff's testimony at a minimum establishes that he was confused about what anti-theft product he was purchasing, specifically, whether it was the "Etch" product, "TracGuard", or "LoJack". (Veal Depo., pp. 140-144). None of the Buyer's Order forms attached to the Amended Complaint identify the "Etch" product. (Dkt. 134, Exs. 1, 4).

11

customers. (Dkt. 134, ¶ 18). Plaintiff contends it was these deceptive acts common to the purported class that hid the true benefit of "Etch" from the consumer and in turn, concealed Plaintiff's cause of action. Contrary to Defendant's assertion, in order to establish that their claims should be equitably tolled, the class members will not have to produce individualized evidence that they did not receive the relevant documents. Rather, the class's equitable tolling argument will depend on whether Plaintiff can establish Defendant engaged in a fraudulent scheme to conceal the true cost and benefit of the "Etch" product, thereby, concealing the TILA violation and Plaintiff's cause of action. Accordingly, common issues of fact and law predominate over individual issues.

*Issues Related to the Finance Act Claims*

As discussed *supra*, Plaintiff alleges that Defendant engaged in a common scheme to mislead Plaintiff, which included misleading or inadequate disclosures in its standard form retail installment sales contract in violation of the Finance Act. While a determination whether Defendant adequately disclosed the sale of the "Etch" product is necessary, the majority of Defendant's disclosures were contained within form documents, such as the buyer's orders, finance contracts and product forms. This supports Plaintiff's contention that Defendant violated TILA and the Finance Act as to "all Subclass members or with respect to no Subclass members." (Dkt. 125, p. 14).

The Fourth Amended Complaint alleges a common scheme and course of conduct concerning the nature of the "Etch" product, its terms and coverage and the manner in which the product was disclosed. Accordingly, the core of this litigation will focus on common factual and legal issues. It is not necessary that all questions of fact or law be common to the class, but only that some questions are common and that these common issues predominate over individual issues. *See Klay*, 382 F.3d at 1254. Finally, it is unnecessary to address Defendant's argument that class

12

certification is inappropriate because Plaintiff must establish detrimental reliance in support of his claim for actual damages under the Finance Act, since according to the allegations of the Fourth Amended Complaint Plaintiff seeks "statutory penalties only with respect to" the Finance Act. (Dkt. 134, p. 21, ¶ f).[10]

### Issues Related to FDUPTA and Chapter 634 Claims

Defendant's contention that Plaintiff's FDUPTA and Chapter 634 claim are not suitable for class certification is unpersuasive. The Fourth Amended Complaint alleges Defendant engaged in a common scheme to deceive or defraud Plaintiff, which included deceptive business practices and violations of Chapter 634. In essence, Plaintiff alleges that Defendant committed the same or very similar unlawful acts utilizing the same methodology against the entire class. While the class members may not have identical claims, Plaintiff has sufficiently established that the common questions of fact and law regarding Plaintiff's FDUPTA claim, including the issue of causation, predominate over individual issues. Moreover, "numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir 2003), *reh'g en banc denied*, 362 F.3d 739 (11th Cir. 2004).

The cases Defendant relies in which class certification of FDUPTA claims was denied are distinguishable. *See Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090, 1093 (Fla. 4th DCA 2003); *Montgomery v. The New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D.Fla. 2001). In both *Hutson* and *Montgomery*, the FDUPTA claims occurred in Florida *and* various other states. Therefore, the claims of non-resident consumers would require the application of consumer protection laws from different states. Plaintiff's FDUPTA claim and the claims of the class members do not pose these same issues, as the alleged unlawful conduct occurred exclusively in Florida.

---

[10] Defendant relies on *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1027 (11th Cir. 2001).

*Issues Related to Unjust Enrichment and Restitution Claims*

The Restatement (First) of Restitution sets forth a four-part test for claims of unjust enrichment: (1) the unjust; (2) retention of; (3) a benefit received; (4) at the expense of another. *See In re Terazosin Hydrochloride*, 220 F.R.D. 672, 697 (S. D. Fla. 2004). Plaintiff, albeit minimally, has established that the class members' proof will include common issues of whether (1) Defendant's deceptive and unfair trade practices regarding the sale of the "Etch" product resulted in it receiving income; (2) whether the income enriched the Defendant at the expense of the class members and (3) whether as a matter of equity, Defendant should be required to return the profits to the class members. Unlike the unjust enrichment claims alleged in *Klay,* 382 F.3d at1267 and *O'Brien v. J.I. Kislak Mortgage Corp.*, 934 F.Supp. 1348, 1359 (S.D. Fla. 1996), the issues relevant to Plaintiff's unjust enrichment claim are susceptible to proof using common generalized evidence. *See Klay*, 382 F.3d at 1267 (class certification denied where different form contracts were used and where different defendants committed various acts in breach of their contracts with different types of care-providing entities); *O'Brien*, 934 F.Supp. at 1359 (class certification denied where plaintiffs had to prove agency relationship between correspondent and defendant for each loan transaction and where individual factual determinations as to whether the subject fee was actually charged, by whom and for whose benefit were required).

For the same reasons, the class restitution claims are not individualized. Plaintiff claims his contract and the class members' contracts are unenforceable because Defendant procured them in violation of Florida's public policy and in violation of Florida's statutes. (Dkt. 134, p. 19-20). According to Plaintiff, *all* the contracts are unenforceable for the same reason. The same common operative facts form the basis of the class members' claims.

## 2. Superiority

Rule 23(b)(3) requires the Court determine that class treatment is superior to other available methods for the fair and efficient adjudication of the claims. *See* Fed. R. Civ. P. 23(b)(3). Factors to be considered as part of this analysis include: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of the class action. *Id.*

In light of this Court's conclusions concerning typicality, adequacy and the predominance elements, Defendant's contention that class action is not a superior method to adjudicate Plaintiff's claims is unpersuasive. Defendant does not contest Plaintiff's representation that no other actions of this nature are pending in Florida against Defendant and that the class will comprise mostly of customers who reside in the Middle District. Accordingly, factors (1) and (3) weigh in favor of finding that class treatment is superior. Moreover, any interest in individual control of separate actions is negligible, as this case involves relatively small individual claims compared to the cost of litigating complex legal issues against a relatively large entity, such as Defendant. Finally, because proof will likely consist of standardized disclosure statements which vary very little among class members, it is unlikely that management of the class action will become overwhelming or unreasonably difficult. Thus, factors (2) and (4) also weigh in favor of finding class treatment superior. Accordingly, it is

**ORDERED AND ADJUDGED** that:

1.      Plaintiff's motion for class certification (Dkt. 124) is GRANTED.

2.      The following class and subclasses are certified:

15

All persons who have purchased vehicles from Crown Auto, which included the sale of Crown Auto's TracGuard product, inclusive of the anti-theft etch insurance, between September 4, 1999 through the present.

All persons who have purchased vehicles from Crown Auto, which included the sale of Crown Auto's TracGuard product, inclusive of the anti-theft etch insurance, and financed that purchase by initially entering into a retail installment sales contract with Crown Auto, no later than September 4, 1999, in which Crown violated Florida Statutes, section 520.12 by (1) failing to clearly and conspicuously make accurate disclosures in writing, in a form that the consumer may keep, prior to the consummation of the credit transaction pursuant to Florida Statutes, section 520.07(2)(a)-(e), as a result of including the cost of anti-theft etch insurance in the amount financed instead of the finance charge without providing the necessary TILA and Regulation Z disclosures; and (2) failing to identify and itemize the cost of TracGuard in accordance with Florida Statutes, section 520.07(3)(d).

All persons who have purchased vehicles from Crown Auto, which included the sale of Crown Auto's TracGuard product, inclusive of the anti-theft etch insurance, and financed that purchase by initially entering into a retail installment sales contract with Crown Auto, with an amount financed not exceeding $25,000.00, no later than September 4, 1999, in which Crown Auto failed to clearly and conspicuously make accurate disclosures in writing, in a form that the consumer may keep, prior to the consummation of the credit transaction, as a result of including the costs of anti-theft etch insurance in the amount financed instead of the finance charge without providing the necessary disclosures, as required by TILA and Regulation Z.

3.     Roy Veal is appointed Class Representative.  This Court reserves jurisdiction to determine class counsel.  Within ten (10) days from the date of this Order, Plaintiff shall move to designate an attorney as class counsel.

4.     Plaintiff's counsel shall file a motion to approve class notice, including a proposed notice in compliance with Fed.R.Civ.P 23(c)(2)(B) within twenty days from the date of this Order.

**DONE AND ORDERED** in chambers this 30th day of March, 2006.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

16